BRASWELL SHIPYARDS,
INCORPORATED,
Plaintiff–Appellee,

v.

BEAZER EAST, INCORPORATED, formerly known as Koppers Company, Defendant & Third Party Plaintiff–Appellant,

and

Elliott S. Braswell, d/b/a Neckland Associates; John Squire; Conserv Oil; Fleet Transport, Incorporated; Pepper Industries; United States Navy; Fedserv Industries, Incorporated, Third Party Defendants.

No. 92–1476.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1993.

Decided Aug. 23, 1993.

Elmer A. Simpson, Jr., argued (V. Robert Denham, Jr. and Linda G. Birchall, on brief), Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for plaintiff-appellant.

Lemuel Gray Geddie, Jr., argued (Eric C. Schweitzer, on brief), Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, SC, for plaintiff-appellee.

Before HAMILTON and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

Beazer East, Inc. (Beazer) appeals from an adverse judgment in the district court finding it liable to Braswell Shipyards, Inc. (Braswell) in the amount of $2,095,144.45, including $1,064,313.63 in prejudgment interest. This judgment compensated Braswell for Beazer's negligent failure to disclose a defective condition in property located in Charleston, South Carolina, which it sold to Braswell. Braswell asserted in its complaint, among other things, claims under state law and § 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607(a). The district court bifurcated the state law claims from the CERCLA claims and held a jury trial on the state law claims. The jury found in favor of Braswell on its negligent nondisclosure claim, and the district court entered judgment on that claim pursuant to Fed. R.Civ.P. 54(b). The CERCLA claims are still pending. Because we conclude the district court abused its discretion in entering judgment pursuant to Fed.R.Civ.P. 54(b) on the state law claim of negligent nondisclosure, we dismiss Beazer's appeal.

I

For approximately forty years prior to 1978, Beazer, formerly known as Koppers Company, Inc., owned and operated a wood treatment plant on a forty-five acre tract of land adjacent to the Ashley River in Charleston, South Carolina. During the treatment process, wood preservatives, mainly creosote, were pumped into cylinders that contained timbers to be treated. During this process, a sludge by-product, containing among other things creosote, accumulated at the bottom of each cylinder. This sludge was removed from the cylinders and dumped in a marsh area on the property and covered with sand. This habit of burying and covering the sludge continued, lasting approximately thirty years.

In 1977, Braswell became interested in purchasing the property for the purpose of erecting a shipyard. A short time later, Braswell purchased the property, and over the next several years, Braswell sold portions of the property. In 1988, Braswell was awarded a ship repair contract with the United States Navy which required the construction of, among other things, a parking lot. In October 1988, Braswell began construction. In clearing the land, the construction crew hired by Braswell discovered pools of creosote underground.

On February 28, 1989, Braswell brought an action against Beazer in the United States District Court for the District of South Carolina alleging claims under § 107 of CERCLA, and state law claims of fraud, negligence (negligent nondisclosure and negligent operation of the property), ultrahazardous activity, money had and received, and indemnity. Braswell also sought declaratory relief pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201–02. On October 3, 1989, Braswell and Beazer stipulated that the CERCLA claims related to the entire tract of land originally purchased by Braswell, but that the state law claims only related to three parcels owned by Braswell as of the date of the stipulation. Those parcels were referred to by their numbers, 19, 35, and 49, on the Charleston County Tax

Assessor's map attached to the stipulation.[1] On November 15, 1989, Beazer filed a third-party complaint against seven defendants, claiming contribution and requesting a declaratory judgment against these additional parties under §§ 113(f) and (g) of CERCLA.

On July 5, 1990, Braswell filed a motion to bifurcate the state law claims from the CERCLA claims. Braswell reasoned that the state law claims were sufficiently different to warrant bifurcation and the introduction of evidence of the third-parties' activities created a threat of undue prejudice to Braswell because that evidence concerned property that was not the subject of the state law claims. With Beazer's assent, the district court bifurcated the state law claims from the CERCLA claims and stayed the CERCLA claims pending the resolution of the state law claims. As to the state law claims, prior to the submission of the case to the jury, Braswell withdrew or the district court dismissed all of the state law claims except the claims for fraud and negligent nondisclosure. The jury awarded Braswell $1,029,830.82 in actual damages and $1,000 punitive damages on the negligent nondisclosure claim, but found in favor of Beazer on the fraud claim.

The parties agree that the actual damages represented the original cost of parcel 19 and the improvements made to that parcel.[2] Braswell then moved for the entry of judgment on the negligent nondisclosure claim and prejudgment interest. In addition, Beazer moved for, among other things, a renewed judgment as a matter of law (formerly judgment n.o.v.) and/or new trial, and a stay in the entry of judgment on the negligent nondisclosure claim pending the outcome of the CERCLA claims. The district court denied Beazer's motions. In granting Braswell's motion for entry of judgment, the district court concluded "due to the issues of first impression raised in the state common law claims portion of this case, no just reason for delay exists for the entry of judgment as to the state common law claims...." (J.A. 842). The district court then entered judgment pursuant to Fed.R.Civ.P. 54(b) on the negligent nondisclosure claim in the amount of $2,095,144.45, which included $1,064,313.63 in prejudgment interest. This appeal ensued.

## II

We are constrained at first to resolve the propriety of the district court's Rule 54(b)

---

1. The district court later excluded parcel 49 from Braswell's state law claims.

2. The jury entered its verdict employing the use of special interrogatories. Those special interrogatories read:
   1. Do you, the jury, unanimously find that the defendant has proven its Statute of Limitations defense by the greater weight of the evidence, thus barring the plaintiff's cause of action based on fraud and the plaintiff's cause of action based on negligence?
   No.
   If your answer to this question is "yes," please complete form 7.
   If your answer to this question is "no," please proceed to answer the following questions.
   2. Do you, the jury, unanimously find that the plaintiff proved by the greater weight of the evidence that the defendant negligently concealed the true condition of its property?
   Yes.
   If your answer to the above question is "yes," please proceed to answer question 3, and then question 4. If your answer to the above question is "no," please proceed to answer question 4.
   3. Do you, the jury, unanimously find that the plaintiff proved by the greater weight of the evidence that the defendant recklessly and willfully concealed the true condition of its property?
   Yes.
   4. Do you, the jury, unanimously find that the plaintiff proved by clear, cogent, and convincing evidence that the defendant committed an act of fraud?
   No.
   If your answer to question 2 is "yes," but your answer to question 3 and question 4 is "no," please complete form 5. However, if your answer to question 2 and your answer to question 3 are "yes," and/or your answer to question 4 is "yes," please complete form 6. If your answer to both question 2 and your answer to question 4 are "no," please complete form 7.
   5. We, the jury, unanimously find for the plaintiff against the defendant the sum of _____ Dollars ($    ) actual damages.
   6. We, the jury, unanimously find for the plaintiff against the defendant the sum of *One Million twenty nine thousand eight hundred thirty and eighty two cents* Dollars ($1,029,-830.82) actual damages and the sum of *One Thousand* Dollars ($1,000.00) punitive damages....
   (Joint Appendix (J.A.) 801–03).

certification because we only obtain jurisdiction when an appeal is taken from a final order, 28 U.S.C. § 1291, or from an appealable interlocutory order, 28 U.S.C. § 1292. *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 431, 76 S.Ct. 895, 897, 100 L.Ed. 1297 (1956).

■ Rule 54(b) permits a district court to enter final judgment as to one or more but fewer than all claims in a multiclaim action, thus allowing an appeal on fewer than all claims in a multiclaim action.[3] The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit. The Rule also allows the district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims.

■ Rule 54(b) certification is recognized as the exception rather than the norm. It should neither be granted routinely, *Curtis–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), nor as an accommodation to counsel. *Corrosioneering v. Thyssen Environmental Systems,* 807 F.2d 1279, 1282 (6th Cir.1986) (citations omitted). As Judge (now Justice) Kennedy observed:

> Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

*Morrison–Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981). The burden is on the party endeavoring to obtain Rule 54(b) certification to demonstrate that the case warrants certification. *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3d Cir.1975) (footnote omitted).

■ The tack which the district court must follow to effectuate a Rule 54(b) certification involves two steps. *Curtis–Wright,* 446 U.S. at 7–8, 100 S.Ct. at 1464–65. First, the district court must determine whether the judgment is final. *Id.* at 7, 100 S.Ct. at 1464. The Court in *Curtis–Wright* stated that a judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co.,* 351 U.S. at 436, 76 S.Ct. at 900). Second, the district court must determine whether there is no just reason for the delay in the entry of judgment. *Curtis–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. This inquiry, "tilted from the start against fragmentation of appeals, is necessarily case-specific." *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir.1988); *see also Curtis–Wright,* 446 U.S. at 10–11, 100 S.Ct. at 1466–67 ("because the number of possible [Rule 54(b)] situations is large, we are reluctant either to fix or sanction narrow guidelines for district courts to follow"). In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency consider-

---

3. Fed.R.Civ.Proc. 54(b) provides:

    (b) **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d at 364 (footnotes omitted); *see also Curtis-Wright,* 446 U.S. at 8, 100 S.Ct. at 1465 ("whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals") (footnote omitted).

Where the district court is persuaded that Rule 54(b) certification is appropriate, the district court should state those findings on the record or in its order. *Spiegel,* 843 F.2d at 43; *Allis-Chalmers Corp.,* 521 F.2d at 364. The expression of clear and cogent findings of fact is crucial. *See Allis-Chalmers,* 521 F.2d at 365 ("The variety and number of factors which may be present in any one case highlights the importance of the district court's evaluation and articulation of those factors leading to its grant of Rule 54(b) certification."). In fact, numerous courts have held that where the district court's Rule 54(b) certification is devoid of findings or reasoning in support thereof, the deference normally accorded such a certification is nullified. *See e.g., Corrosioneering,* 807 F.2d 1279 (The absence of reasons in support of a district court's certification nullifies any deference due the Rule 54(b) order.) (citations omitted). This straightforward exercise assists not only the district court in assessing the equities of the situation, but also the appellate review of a Rule 54(b) certification. *Allis-Chalmers,* 521 F.2d at 364.

Our review of a Rule 54(b) certification is also guided by some fundamental precepts. First, because it involves the scope of our appellate jurisdiction, we are compelled to raise *sua sponte* the issue of whether the district court's entry of final judgment was warranted under Rule 54(b). If the entry of final judgment was unwarranted, we must dismiss the appeal. *See, e.g., Para-Chem Southern, Inc. v. Lowenstein Corp.,* 715 F.2d 128, 133 (4th Cir.1983). Second, *Curtis-Wright* tells us that the "proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtis-Wright,* 446 U.S. at 10, 100 S.Ct. at 1466. Thus, our conventional review of the district court's Rule 54(b) certification is for an abuse of discretion. *Para-Chem Southern,* 715 F.2d at 132 (quoting *Curtis-Wright,* 446 U.S. at 10, 100 S.Ct. at 1466); *see also Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 909, 100 L.Ed. 1311 (1956).

In the case *sub judice,* the district court's only statement supporting certification was "due to the issues of first impression raised in the state common law claims portion of this case, no just reason for delay exists for the entry of judgment as to the state common law claims...." (J.A.842). It is difficult to discern what the district court meant.[4] This dearth of support makes appellate review of the Rule 54(b) certification in this case a difficult task indeed. Perhaps the most prudent course would be to simply vacate the Rule 54(b) certification and remand (with instructions) for a statement of reasons supporting certification. We reserve the right to do this if future Rule 54(b) certifications arrive before us devoid of any findings or reasoning. However, a remand would afford little assistance because it is clear that the Rule 54(b) certification with respect to the negligent nondisclosure claim was not within the proper bounds of the district court's discretion.

Initially, we note that the fact the parties on appeal remain contestants below militates against the use of Rule 54(b). *Spiegel,* 843 F.2d at 44 ("It will be a rare case where Rule 54(b) can appropriately be ap-

---

4. Perhaps the district court reasoned that by entering judgment it would accelerate appellate review of the "double recovery" issue. Where accelerated appellate review of a controlling question of law is the motivating factor in deciding to enter judgment under Rule 54(b), an interlocutory appeal pursuant to 28 U.S.C. § 1292 is the more appropriate course.

plied when the contestants on appeal remain contestants below."). In addition and most troubling with this case is the interrelationship of the state law claim on appeal and the CERCLA claims pending below. If pursued singularly, the recovery in the negligent nondisclosure claim is separate and distinct from the recovery under CERCLA because the negligent nondisclosure claim provides damages measured by the "benefit of the bargain" whereas the CERCLA claims will involve a determination of responsibility for response costs. *See Piccolini v. Simon's Wrecking,* 686 F.Supp. 1063, 1068 (M.D.Pa. 1988) (Damages for diminution in property value and lost income are not recoverable under CERCLA).[5] However, when pursued together, the damages under negligent nondisclosure and CERCLA are inextricably intertwined because a CERCLA cleanup will most assuredly increase the value of the damaged property at issue. Consequently, if Braswell is successful on its negligent nondisclosure and CERCLA claims, it will not only receive the "benefit of the bargain" under South Carolina law, but will also receive a piece of property that has appreciated as well, and hence a windfall.

To illustrate this point, we turn our attention to the Eighth Circuit decision of *Gopher Oil Co. v. Union Oil, Co.,* 955 F.2d 519 (8th Cir.1992). In *Gopher Oil,* the plaintiff, Gopher Oil, asserted claims to recover damages, environmental cleanup costs, and attorneys' fees from the defendant, Union Oil Company, under Minnesota's common law fraud and Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.04, 115B.08, and CERCLA. Unlike the present case, the state law and CERCLA claims in *Gopher Oil*

were not bifurcated. The jury found that Union Oil defrauded Gopher Oil and issued an advisory verdict finding Union Oil 100 percent responsible for the environmental cleanup costs. The district court adopted the jury's determination that Union Oil was 100 percent responsible for the environmental cleanup costs. The jury awarded Gopher Oil $1,823,272.81 on the fraud claim, $1,400,000 representing the purchase price of the property (the jury valued the property at $0) and $423,272.81 representing previous environmental cleanup costs incurred by Gopher Oil. The district court did not enter judgment on this amount, but rather retained jurisdiction over the fraud claim in order to assess the correct measure of out-of-pocket expenses after the environmental cleanup was completed and the property was revalued. In other words, the district court retained jurisdiction to adjust the award to account for the increased value of the land after the environmental cleanup because, under Minnesota law, a plaintiff prevailing in an action for fraud is entitled only to out-of-pocket damages. Minnesota defined such damages as the difference between the purchase price of the property and the value of the land in its actual condition, plus any damages proximately caused by the fraud. The district court reasoned that an award of the full purchase price would bestow a windfall on Gopher Oil because it would retain the land and that land would no longer be worthless after the cleanup was completed and some value was restored.

Gopher Oil challenged the district court's decision to retain jurisdiction over the fraud claim, contending that it was entitled to full damages on the fraud claim pursuant to the

**5.** The court in *Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1285–86 (D.Del.1987), *aff'd,* 851 F.2d 643 (3rd Cir. 1988), succinctly illustrates this point:

Congress in enacting CERCLA clearly manifested an intent not to provide compensation for economic losses or for personal injury resulting from the release of hazardous substances.

\* \* \* \* \* \*

As Judge Stapleton noted, this legislative history makes clear that "Congress, in enacting CERCLA, intended to provide a vehicle for cleaning up and preserving the environment

from the evils of improperly disposed of hazardous substances rather than a new font of law on which private parties could base claims for personal and property injuries." [*Artesian Water Co. v. Government of New Castle County*], *Artesian I,* 605 F.Supp. [1348] at 1357 n. 10 [(D.Del.1985)]; *see Exxon Corp. v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 1108, 89 L.Ed.2d 364 (1986) ("Superfund money [is not] available to compensate private parties for economic harms that result from discharges of hazardous substances"). Artesian's claims for cost recovery must therefore be viewed in light of the fundamental, if elusive, distinction between response costs and economic losses.

jury's verdict under the Seventh Amendment and Minnesota law. The Eighth Circuit rejected these arguments, reasoning that:

> [T]he district court properly adapted Minnesota's out-of-pocket fraud damages rule to a case where the value of the contaminated property may be increased subsequent to the sale by mandatory cleanup activities pursuant to CERCLA and MERLA. Accordingly, the calculation of out-of-pocket damages correctly may be based upon the difference between the purchase price of the contaminated site and the value of the site after completion of the cleanup.

*Id.* at 529. The *Gopher Oil* court opined that its decision was not incongruous with the Seventh Amendment because the district court's authority to adjust the damage award was within its power to correct a verdict that is against the weight of the evidence or would result in a miscarriage of justice. *Id.* (citations omitted). Furthermore, the *Gopher Oil* court also stated that it was unnecessary to retain jurisdiction of the case for the amount of time necessary to complete the environmental cleanup. Instead, the court noted that the assessment of the value of the property after cleanup should be made as promptly as possible, employing expert testimony. The court remanded the case to the district court for a recalculation of fraud damages; *i.e.*, the difference between the purchase price of the contaminated property and the value of the property after cleanup plus any damages proximately caused by the fraud.

We are persuaded by the reasoning espoused in *Gopher Oil* and believe it applies to our case with considerable force. The district court in the present case properly instructed the jury that the measure of damages under the "benefit of the bargain" rule employed in South Carolina was the difference between the value of the property at the time of sale and the value of the property as falsely represented. *See, e.g., Fields v. Yarborough Ford, Inc.,* 307 S.C. 207, 414 S.E.2d 164, 166–67 (1992); *Satcher v. Berry,* 299 S.C. 381, 385 S.E.2d 41, 43 (Ct.App.1989); *State v. Tillman,* 255 S.C. 517, 180 S.E.2d 206, 209 (1971). The ominous danger of a "double recovery" that existed in *Gopher Oil* is thus equally present because South Carolina law, similar to Minnesota law, does not contemplate that the value of the property once contaminated will be restored. If allowed to stand, the judgment in the case could allow Braswell to not only recover the purchase price of the property and the cost of improvements in the form of consequential damages, but also could allow Braswell to reap the benefits—the increased value of the property—from the CERCLA cleanup as well. Beazer summarizes its predicament very succinctly:

> The judgment awarded the full value of the property and its improvements to Braswell Shipyards as if the property was brand new, but would always be worthless. Inconsistently with that result, however, Braswell Shipyards has sued to require Beazer to pay for the clean-up of the property under CERCLA. (Complaint, pp. 6–8; JA 25–27). Additionally, EPA has instituted proceedings under CERCLA to investigate the site. (Federal Register, 2/7/92, p. 4827; Add. 9–16). Ultimately, when clean-up occurs under CERCLA, if Braswell Shipyards is blameless, as it claims, it will have its property cleaned-up without cost to it. It will therefore have cleaned-up property, a return of every dollar it ever spent on the property, interest on that money from the day it was spent, the use of the property and the profit from that use, and the ability to continue earning money from the property. Further, if Braswell Shipyards ever decides to sell the property, the property will have been cleaned up. The speculative impediment to sale will therefore have been removed, and Braswell Shipyards can recover once again the full value of the property.

Appellant's Brief at 25–26.

A double recovery is not consistent with South Carolina law. *Taylor v. Hoppin' Johns, Inc.,* 304 S.C. 471, 405 S.E.2d 410, 412 (Ct.App.1991) ("[T]wo awards violate the basic rule of law that there can be no double recovery for a single wrong and a plaintiff may recover his actual damages only once."). The threat of a double recovery that exists when a party pursues state common law

claims of fraud and negligent nondisclosure and CERCLA claims is a compelling reason to require the district court in this case to retain jurisdiction over the state law claim until the CERCLA claims are resolved. The interrelationship of the claims requires as much. To hold otherwise would allow Braswell to potentially recover double damages, a result neither contemplated nor permitted under South Carolina law. *Id.* Thus, the district court abused its discretion in finding no just reason for the delay in the entry of judgment on the negligent nondisclosure claim. Fed.R.Civ.P. 54(b).[6]

■ From the foregoing, we can suggest the appropriate analytical framework to be followed in resolving the negligent nondisclosure damage award. The district court in this case should withhold the entry of judgment on the state law claim until after the CERCLA claims are resolved. The district court would then be in an appropriate position to determine the appropriate damage award for the negligent nondisclosure, "taking into account the projected value of the site after the projected cleanup and any other matters appropriate to the final assessment of [negligent nondisclosure] damages." *Gopher Oil,* 955 F.2d at 529. In determining the value after cleanup, the district court would be free to employ expert testimony presented by the parties or called by the court. *Id.* Once accomplished, the district court can enter judgment on the negligent nondisclosure claim.

### III

Accordingly, for the reasons stated herein, the appeal is dismissed and the case is remanded to the district court with instructions to vacate its March 16, 1992 order, in which the district court found no just reason for the delay in the entry of judgment on the negligent nondisclosure claim, and its March 22, 1992 judgment, and to conduct further proceedings consistent with this opinion.

*DISMISSED AND REMANDED WITH INSTRUCTIONS*

LUTTIG, Circuit Judge, dissenting:

The majority takes the unusual step of holding that the district court abused its discretion merely by entering judgment under Fed.R.Civ.P. 54 on the only jury verdict before it, concluding that the district court instead should have suspended entry of judgment until independent claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") are litigated and resolved. Not even the appellant assigned as error the district court's entry of judgment under Rule 54. Indeed, all of the parties to this suit specifically agreed to bifurcate the CERCLA claims from the state law claims before the district court and consented to appellate disposition of the state law claims prior to trial of the CERCLA claims.

We may disturb a trial court's decision to enter judgment under Federal Rule of Civil Procedure 54(b) "*only* if [we] can say that its conclusion was *clearly unreasonable.*" *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980) (emphasis added). The district court's decision to enter judgment in this case not only was not "clearly unreasonable"—tellingly, a standard nowhere referenced by the majority—it was eminently reasonable. The state common law claims at issue in this appeal are separable from the CERCLA claims and no appellate court would be required to address these issues again on appeal from a verdict on the CERCLA claims. *See id.* at 8, 100 S.Ct. at 1464–65. Accordingly, I would affirm the district court's judgment in all respects, and I dissent from the court's decision not to do so.

### I.

Underlying the majority's conclusion that the district court clearly acted improperly in entering judgment is its belief that Braswell

---

**6.** We are also persuaded by the fact that the record is devoid of any evidence that Braswell will be overly prejudiced by our decision. It is clear that Braswell has used and will continue to use the property for its intended purpose. In addition, while awaiting the outcome of the CERCLA proceeding, Braswell will be entitled to prejudgment interest on the negligent nondisclosure claim.

Shipyards, Inc., *could* eventually enjoy a "double recovery": "To hold otherwise would allow Braswell to *potentially* recover double damages...." *Ante* at 1338 (emphasis added). This belief in turn is premised on the majority's determinations first, that the state law and CERCLA claims are necessarily interrelated and second, that Braswell will pursue and prevail upon its CERCLA claim. It may or may not be necessary ultimately to limit further damages to Braswell so as to avoid double recovery. There is not, at this stage of the litigation, however, the "ominous danger" of double recovery that the majority perceives. *See id.* at 12, 100 S.Ct. at 1467. Even if a fear of double recovery were legitimate, it would not warrant the majority's holding that the district court abused its discretion in simply entering judgment on the jury's verdict. As the Supreme Court admonished in *Curtiss–Wright,* "the proper role of the court of appeals [in Rule 54(b) cases] is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." 446 U.S. at 10, 100 S.Ct. at 1466; *see also Para–Chem Southern, Inc. v. M. Lowenstein Corp.,* 715 F.2d 128, 132 (4th Cir.1983) (warning that district court's discretion in entering judgment under Rule 54(b) "should not be disturbed lightly").

## A.

Central to the majority's conclusion that the entry of judgment was an abuse of discretion is its view that Braswell's recovery for negligent nondisclosure under South Carolina law is "inextricably intertwined" with any benefit Braswell might some day enjoy from a CERCLA cleanup of its property. The closeness of the relationship between these two claims is at best questionable, since the claims present different questions of law and fact, could be separately enforced, and seek different sorts of relief. *See, e.g., Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97

L.Ed.2d 764 (1987). Some degree of overlap between the claims, of course, is no bar to the entry of a Rule 54(b) judgment. *See Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 580–81 & n. 18, 100 S.Ct. 800, 805–06 & n. 18, 63 L.Ed.2d 36 (1980); *Cullen,* 811 F.2d at 711 (noting that "claims may be considered separable [for Rule 54(b) purposes] even if they have arisen out of the same transaction or occurrence"); *Sheehan v. Atlanta Int'l Ins. Co.,* 812 F.2d 465, 468 (9th Cir.1987) ("The Rule 54(b) claims do not have to be separate from and independent of the remaining claims."). As the Supreme Court explained in refusing to find an abuse of discretion under Rule 54(b), separable claims "certainly *can* be decided independently of each other." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (common law and federal antitrust claims separable).

Nor is it insignificant that throughout the proceedings below, even Braswell's *opponent* insisted that the various CERCLA claims were *irrelevant* to the state law claims. Early in this litigation, the district court, with the agreement of *all* of the parties, bifurcated the CERCLA claims from the state law claims. *See* J.A. at 61. The *defendant* below, Beazer Shipyards, Inc., then asked the court to exclude all evidence of CERCLA costs, "on the grounds that *such information is irrelevant in this portion of the case.... Such information is relevant only to the issues which remain to be determined in the other bifurcated portion of this litigation." Id.* at 224–25 (emphasis added). Agreeing, the district court granted this motion, and warned: "[T]here is not going to be any testimony about ... remedial response costs.... [The bifurcated CERCLA action] has just got *nothing to do with this case.* Got nothing to do with this case." *Id.* at 305 (emphasis added). Later, the same party, Beazer, asked the court to instruct the jury to exclude any cleanup costs from any damages awarded to Braswell, and the court instructed the jury accordingly.[1] Thus, not

---

1. Beazer asked the court to instruct the jury: "[I]f you find Braswell is entitled to any damages, you must exclude from those damages any charges or costs that you believe may be neces-

sary to investigate the environmental condition of the property, or to clean the property up, if necessary. The necessity for any investigation or clean-up will be determined in another proceed-

even the parties, it appears, share the majority's view that the state law and CERCLA claims are so interrelated that the district court abused its discretion in entering judgment on the state law claims. In fact, Beazer did not even advance on appeal the claim that it was error to certify under Rule 54 because of the interrelationship of the state and federal claims.[2]

## B.

The majority's analysis of the "double recovery" dilemma is flawed for another reason as well. It rests on the twin assumptions that Braswell's state law damages were unduly inflated because they presupposed a contaminated property, and that any recovery that Braswell might some day enjoy under CERCLA cannot be adjusted to reflect its earlier state law recovery. Neither assumption is correct.

The first assumption regards as inevitable that a CERCLA cleanup will occur and increase the property's value significantly. When (and perhaps even whether) remediation of the property will occur is speculative and quite likely years away. Moreover, there has been no evidence whatsoever that a cleanup would increase the property's market value; indeed, the only evidence in the record was to the contrary. See id. at 386–87 (testimony of site remediation expert); id. at 423–44 (testimony of real estate appraiser). Nor is there any question that the district court properly instructed the jury on the measure of state law damages: it gave the instruction proposed by the defendant, Beazer, that Braswell's damages, if any, were the difference between the property's value falsely represented and the actual market value of the property, as contaminated, *at the time of sale in 1978.*[3] Id. at 260 (Beazer's proposed instruction, citing *Lawson v. Citi-*

zens & Southern Nat'l Bank, 255 S.C. 517, 180 S.E.2d 206, 209 (1971)); id. at 733–34 (district court's instruction). Despite having sought and obtained this instruction, Beazer now appears to be arguing—and the majority appears to have accepted—that the state law damages must await adjustment to reflect the property's actual market value not in 1978, nor even in 1993, but at some undetermined point in the future after a CERCLA cleanup occurs.

The second assumption overlooks important aspects of the pending CERCLA litigation. As a threshold matter, Braswell may find itself liable for its own cleanup costs because it faces joint and several liability under section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1). Not only might Braswell lose on its claims for reimbursement of response costs and for declaratory judgment under CERCLA,[4] but Beazer might prevail on its CERCLA counterclaim against Braswell for contribution and declaratory judgment. See J.A. at 52–54 (Def.'s Countercl. ¶¶ 9–16). More importantly, the district court resolving the CERCLA claims retains broad authority to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). The district court therefore could appropriately take Braswell's prior state law recovery into account as an equitable factor if, as Beazer alleges, Braswell bears some responsibility for the property's contamination. Cf. *Weyerhaeuser Co. v. Koppers Co.*, 771 F.Supp. 1420, 1426–27 (D.Md.1991) (treating relative benefit to parties as equitable factor, and allocating liability for responses costs sixty percent to defendant—ironically, Beazer's predecessor company—and forty percent to plaintiff). It is thus hardly a foregone con-

---

ing. I charge you not to speculate as to what costs may be incurred in that process and not to include such costs in any damages calculation." Id. at 264. The district court granted this request, instructing the jury that "cleanup costs are not a part of the plaintiff's damages in this case. That's taken care of somewhere else. If any." Id. at 734.

2. Beazer did not allege an abuse of discretion in entering judgment under Rule 54(b) until this

court requested supplemental briefing on that issue, almost four months after oral argument.

3. Congress had not even enacted CERCLA in 1978.

4. The district court denied Braswell's motion for partial summary judgment on its claim for declaratory judgment under CERCLA. See J.A. at 65–68, 73.

clusion that Braswell will be able to shift the cleanup costs to another party.[5]

*Gopher Oil Co., Inc. v. Union Oil Co.,* 955 F.2d 519, 528–29 (8th Cir.1992), the principal authority relied upon by the majority for its conclusion that the state law judgment *must* be suspended until after the CERCLA trial to avoid the spectre of double recovery, simply does not support its holding that the district court here abused its discretion. In *Gopher Oil,* the question was whether the district court had erred *in retaining jurisdiction* over the state-law fraud claim after it had entered judgment on *the CERCLA claim.* The fact that it was not an abuse of discretion to retain jurisdiction over the state-law claim in *Gopher Oil* —the only remaining claim—is no support for the conclusion it was an abuse of discretion to certify the state claim in this case where the CERCLA claim is still pending. For the reasons discussed, *supra,* any issue of double recovery can be addressed as easily in the CERCLA phase, as in the state law phase, of the proceedings, where, as here, the two sets of claims have been bifurcated.

## II.

The Supreme Court, in its unanimous decision on "the proper function of a reviewing court in Rule 54(b) cases," instructed that "the discretionary judgment of the district court should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466 (quoting *Sears, Roebuck,* 351 U.S. at 437, 76 S.Ct. at 901). Heeding that instruction, I would not disturb the district court's exercise of discretion in entering judgment. That decision—amply supported—was not only well within the court's discretion, it was an appropriate exercise of its discretion.

**5.** Not even Beazer argues that double recovery is legally inevitable. It concedes that "[a] set-off [of Braswell's state law recovery against its recovery of cleanup costs] *would be possible* only if Braswell Shipyards itself undertook a clean-up and sought to recover its clean-up costs from Beazer." Appellant's Supp.Br. at 7 (emphasis added). And Beazer does not suggest that any legal obstacle would prevent this sequence of events. It argues instead simply that "[t]here is no incentive for Braswell Shipyards to undertake a clean-up...." *Id.*