BELL MICROPRODUCTS,
INC., Plaintiff,

v.

GLOBAL–INSYNC, INC.

and

Global Intellicom, Inc., Defendants.

No. 98–536–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 11, 1998.

H. Slayton Dabney, Jr., Laurie A. Hand, John H. Maddock, III, McGuire, Woods, Battle & Boothe LLP, Richmond, VA, for Plaintiff.

Joel F. Brenner, Michael J. Dixon, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

The matter comes before the Court on plaintiff's motion for partial summary judgment and certification of that judgment pursuant to Rule 54(b), Fed.R.Civ.P., and on defendant's motion for an enlargement of time within which to file a response to plaintiff's motion for partial summary judgment. Plaintiff Bell Microproducts, Inc. ("Bell"), a manufacturer and distributor of electronic and computer components, sues to recover amounts due and owing from products shipped to defendant Global–Insync, Inc. ("Insync"), a wholly owned subsidiary of Global Intellicom, Inc. ("Global"). The complaint alleges three counts: (i) breach of contract against Insync in the amount of $784,556.43, plus 12% interest and costs incurred in collecting such amounts, including attorney's fees, (ii) unjust enrichment against Insync in the amount of $784,556.43 for use and enjoyment of the parts not paid for, and (iii) breach of guarantee against Global in the amount of $784,556.43, plus 12% interest and attorney's fees. Plaintiff seeks summary judgment against both defendants of a partial amount owed, as well as interest and attorneys' fees. Defendant seeks extension until September 18, 1998 to respond, and a hearing on the summary judgment motion on September 25, 1998.

## I.

In this diversity action, Bell is a California corporation with its principal place of business located in California. Insync is a Virginia corporation with its principal place of business in Virginia; Global is a Nevada corporation with its principal place of business in New York.

### 1. The Agreements

From October 1997 to February 1998, Bell shipped electronic and computer components to Insync with attached invoices. Both the front and the back of each invoice indicated that payment was due within 30 days from the date of the invoice. The back of the invoice also states that Bell is entitled to 12% interest per annum after 30 days on the outstanding balance until paid, and that title to the material passes to the buyer (Insync) upon delivery by Bell to a carrier for delivery to the buyer.

In August of 1997, prior to these shipments, Insync executed a Security and Subordination Agreement to secure payment to Bell under the invoices. Under the Agreement, Bell was granted a purchase money security interest in all of Insync's inventory which had been purchased from Bell, as well as a security interest in Insync's accounts, equipment, inventory and general intangibles. The Agreement further provides that default occurs if Insync fails to pay any indebtedness when due, and that Bell is entitled to 12% interest per annum on any amount in default. Bell is also entitled to all attorneys' fees, costs and expenses in enforcing its rights under the Agreement.

Bell also signed a Guarantee Agreement in 1997 [1] with Global, in which Global unconditionally guaranteed payment of any and all indebtedness of Insync. Bell's rights under this Guarantee are triggered when Insync fails to pay any due indebtedness. Under the agreement, Bell is entitled (i) to proceed directly against Global without first proceeding against Insync, (ii) to recover reasonable attorney's fees and costs, and (iii) to 12% interest per annum on the amount due from the date due until paid.

---

1. The date of the Guarantee agreement was left blank.

## 2. The Amount Due and Owing

The parties do not dispute that defendants owe plaintiff's $560,867.89; defendants, who appear to be in some financial straits,[2] have admitted liability for that amount in their Second Joint Supplemental Responses to Plaintiff's Interrogatories ("Second Response"). Although the complaint seeks to recover $784,556.43, plaintiff seeks summary judgment for only $631,279.89. Defendants claim in their Second Response that plaintiff erroneously failed to credit $132,799.54 in payments made against invoices, and thus the amount due and owing is not $784,556.43, but $651,749.84. Against that figure, defendants further subtract (i) outstanding Return Merchandise Authorizations ("RMAs")[3] in the amounts of $11,831.45 and $788.50, (ii) RMA inventory valued at $7,850 and (iii) Bell Microproducts items at Insync valued at $70,412. Plaintiff apparently concedes summary judgment is inappropriate as to the amounts of the payments defendants allege were not properly credited, the RMAs sent but not credited, and the outstanding RMA inventory (i.e. defective inventory for which Insync has yet to file an RMA). Still, plaintiff argues that since defendants do not offer any grounds on which title to the Bell items at Insync remains with Bell, much less any supportive evidence of any such theory or that would contradict the plain language of the invoices, summary judgment is appropriate as to that amount as well. Thus, $631,-279.89 is the entirely undisputed amount ($560,867) plus the Bell inventory amount ($70,412).[4]

## 3. Defendants' Conduct during Litigation

Two incidents concerning defendants' litigation conduct merit attention. First, on June 5, 1998, Bell served its First Request for Admissions, Interrogatories and Request for Production of Documents. Objections were due on June 23, 1998, and responses on July 8, 1998. On June 22, 1998, the day before objections were due, counsel for defendants filed a motion to withdraw and a motion to enlarge the time to file discovery objections to August 7, 1998 to allow defendants to retain new counsel. On June 23, 1998, defendants withdrew both motions, and filed a new motion seeking until July 6, 1998 to file objections. This request was granted over plaintiff's objection.

Second, all discovery was due on July 8, 1998; defendants responded to the requests for admission on the 8th, to some of the interrogatories on the July 10, and to other interrogatories with additional "supplemental responses" on July 17, the day after plaintiff filed a motion to compel. Plaintiff was in fact awarded $2,492 in sanctions for defendants' failure to provide complete, timely and accurate discovery responses. Defendants did not supply a definitive response to the outstanding interrogatory regarding how

---

**2.** From the depositions of Eileen Buonomo, Vice President of Insync, and David Mortman, President of Global, it is clear that both Insync and Global are experiencing serious cash flow problem. Furthermore, it appears from the record that Insync has only two open contracts, one of which ends at the end of 1998, and that Global is being investigated by NASDAQ for failure to meet its requirements for small cap stock, specif-ically their net worth or market capitalization criteria. Insync also has outstanding debt to at least six other vendors, debt which totals over $600,000 (largely because they owe $400,000 to a vendor named ALT).

**3.** RMAs are forms submitted to Bell for credit when an incorrect or defective product was received.

**4.** To summarize:

| | |
|---|---|
| 788,556.43 | Amount sought in Complaint |
| − 132,799.54 | Amount defendants claim was not credited |
| − 11,831.45 | RMAs not yet deducted |
| − 788.50 | RMAs not yet deducted |
| − 7,850.00 | RMA inventory |
| 631,279.89 | Total sought by plaintiff's in summary judgment motion |
| − 70,412.00 | Bell inventory at Insync |
| 560,867.89 | Undisputed amount |

much defendants believe is due and owing to Bell until August 5, 1998.

## II.

### 1. The Motion for Enlargement of Time

 Under Rule 6, Fed.R.Civ.P., the court may, "for cause shown at any time in its own discretion," enlarge the time period for an act required to be done at a specific time. Thus, enlargement of time to respond is purely discretionary with the court. Even if such motions are usually routinely granted, this case presents cause for an exception. The reasons given in the motion for enlargement filed September 1, 1998 are as follows: "Counsel for defendants have just returned from vacation. Counsel must devote substantial time to other matters between now and September 8. Additionally, counsel requires additional time to confer with its clients, whose principal officers are in New York." In light of defendants' dilatory conduct in discovery such reasons are not persuasive.[5] In the short course of this action, defendants have delayed the progress toward resolution by filing a motion to withdraw counsel the day before objections to discovery requests were due and then withdrawing that motion and obtaining an extension, and by failing to comply with the discovery rules requiring timely, complete and accurate responses to such an extent that sanctions were imposed. Thus, the motion for enlargement of time must be denied.

### 2. The Motion for Partial Summary Judgment

Under Rule 56(a), Fed.R.Civ.P., a party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all [claims] or any part thereof." Thus, summary judgment may be granted as to any part of a claim.[6] Rule 56(d) operates in a case of partial summary judgment, where the court does not issue a summary judgment ruling on the entire case, but instead makes rulings which shape the litigation.[7] Under Rule 56(d), the court, after determining which material facts are not controverted and which are actually and in good faith controverted, must "make an order specifying the facts that appear without substantial controversy, including *the extent to which the amount of damages or other relief is not in controversy.*" (emphasis added).[8] Furthermore, since such an order is generally not final, it is within the court's discretion to revise the order at a later point, giving proper notice to the parties so that no prejudice results.[9]

 In this case, it is clear from the Second Response that there is no dispute as to liability of Insync as to Count I and Global as to Count III. Even a substantial portion of the damages is not disputed; only those damages claimed in excess of $560,867.89 remain in dispute. Thus, a Rule 56(d) summary judgment order for that amount is appropriate. More difficult is the question of

5. In opposition, plaintiff also notes that there are at least two attorneys at the law firm of defendants' counsel listed as assigned to this case, and that defendants also have in-house counsel supervising the case.

6. *See also* 11 Moore's Fed. Prac. § 56.40[1] (Matthew Bender 3d ed.) ("[I]t is now well-established that a court may 'grant' partial summary 'judgment' that establishes the existence or non-existence of certain facts, even though no judgment is entered on a claim.").

7. *See Limehouse v. Resolution Trust Corp.,* 862 F.Supp. 97, 102 (D.S.C.1994) (noting that narrowing scope of issues for trial by partial summary judgment under Rule 56(d) is appropriate); *see also* 11 Moore's Fed. Prac. § 56.40[2].

8. *See, e.g., United States v. State of West Virginia,* 537 F.Supp. 388 (S.D.W.Va.1982) (entering partial summary judgment under Rule 56(d) as to amount of liability because material facts rele-

vant to amount of damages not disputed); *Rockwell Int'l Corp. v. S/S Koeln Express,* 1987 WL 33397 (D.Md.) (limiting defendant's potential liability under 56(d)).

9. *See Smith & Loveless, Inc. v. Maitland Bros. Co.,* 937 F.2d 603, 1991 WL 124351 (4th Cir. 1991) (unpublished opinion) (because summary judgment was partial, not final, district court erred in not revising amount of interest awarded); Rule 54(b), Fed.R.Civ.P. (any order not certified under Rule 54(b) that adjudicates fewer than all the claims of fewer than all parties is subject to revision at any time before entry of judgment); *see also* 11 Moore's § 56.40[2]; *Lasercomb America, Inc. v. Holiday Steel Rule Die Corp.,* 829 F.2d 36, 1987 WL 44693 (4th Cir. 1987) (dismissing appeal from grant of partial summary judgment because it was not final appealable order).

the approximately $70,000 in Bell inventory. It is clear that under the invoices, title to these products passed upon delivery to the carrier. Furthermore, the time to accept or reject such a shipment has long since passed; nothing has been shipped since February at the latest, and under the terms of the invoice, rejection must occur within 30 days. Nor are any facts or reasons adduced in defendants' Second Response or elsewhere to suggest why this amount should be subtracted (unlike the other two categories, i.e., RMAs not yet credited and RMAs not yet filed with Bell). This is significant because interrogatories and admissions attached to and in support of the motion for summary judgment present sufficient evidence to shift the burden under Rule 56(e), Fed.R.Civ.P., to defendants, who have not responded with opposing affidavits, but have chosen instead to request more time.[10] Additionally, it appeared at oral argument that defendants now concede this amount is due and owing. In these circumstances, partial summary judgment for an additional $70,000 is warranted. Furthermore, summary judgment as to liability for interest and attorneys' fees must also be granted. Although there does not appear to be any reason to dispute that interest and attorneys' fees are expressly granted under the agreements, granting summary judgment other than as to liability on these issues at this stage would be premature, since any such awards will ultimately depend on (i) what claims are ultimately allowed and (ii) future litigation costs.

### 3. The Motion for Certification of Final Judgment Pursuant to Rule 54(b) [11]

A request for a Rule 54(b) certification requires a court to undertake a two step process. First, the court must determine that the judgment is final, in the sense " 'that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " See Braswell Shipyards, Inc. v. Beazer East, Inc., 2 F.3d 1331, 1335 (4th Cir.1993) (quoting Curtiss–Wright Corp. v. General Elec. Co., 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)).[12] Second, the court must determine that there is "no just reason for delay." Id. This inquiry is "tilted from the start against fragmentation of appeals." Id. In determining whether there is "no just reason for delay" under Rule 54(b), a district court must consider factors including:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Id. 2 F.3d at 1335–36. Furthermore, "the fact that the parties on appeal remain contestants below militates against the use of Rule 54(b)." Id. 2 F.3d at 1336. Indeed, it is settled that certification of a judgment as to a claim or party in a multi-claim or multi-party suit is disfavored in the Fourth Circuit. See Lyles v. Popkin, 36 F.3d 1093, 1994 WL 525824 (4th Cir.1994); see also Brooks v. Owensby, 10 F.3d 806, 1993 WL 483135 (4th Cir.1993) (unpublished opinion) (certification

---

**10.** Under Rule 56(e), Fed.R.Civ.P., once a summary judgment motion is made and appropriately supported, the burden shifts to the opposing party to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(c), Fed.R.Civ.P., allows the adverse party to serve opposing affidavits prior to the day of the hearing.

**11.** Rule 54(b) states:
> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court

may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

**12.** See also Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 531 (4th Cir.1989) (affirming after 54(b) certification grant of partial summary judgment on three of four separately stated claims); Bond Distributing Co. v. Carling Brewing, 325 F.2d 158 (4th Cir.1963) (upholding after 54(b) certification grant of partial summary judgement as to an individual count).

warranted only in exceptional cases). In the rare case where certification is appropriate, the district court must make express findings on the record or in its order. *Braswell,* 2 F.3d at 1335.[13]

Certification is not appropriate on the facts of this case. Although plaintiffs correctly note that the solvency of the parties is an issue to be considered under the second prong of the two prong test, the first prong is not reached here, as there is no final judgment of a claim. Where, as here, summary judgment is granted as to liability and as to some but not all of the claimed damages, there has been no "ultimate disposition of an individual claim." *Curtiss–Wright Corp.,* 446 U.S. at 7, 100 S.Ct. 1460. Plaintiffs are entitled to a judgment as to liability, which is expressly interlocutory under Rule 56(c), Fed.R.Civ.P.,[14] and a partial judgment as to amount of liability as to Claims I and III. Neither individual claim will be fully adjudicated. *See United States v. Shepherd,* 819 F.2d 1139, 1987 WL 37542 (4th Cir.1987) (unpublished opinion) (partial summary judgment resolving liability issue and part of damage issue, but leaving an issue of damages open neither final nor certifiable under Rule 54(b)). Moreover, there is no close and compelling legal question which would elevate these facts above the ordinary case. Thus, the request for certification must be denied.

---

**13.** Moore's Federal Practice does note that although partial summary judgments of a claim not totally adjudicated are not ordinarily an appealable judgment, such claims that involve "a close and controlling legal question" may be certified. *See* 11 Moore's Fed. Prac. § 56.40[3].

**14.** Rule 56(c), Fed.R.Civ.P., expressly allows a summary judgment, interlocutory in character, to "be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."