## CAPITALSOURCE FINANCE, LLC
### v.
## DELCO OIL, INC., et al.
### Civil Action No. DKC 2006–2706.

United States District Court,
D. Maryland.

March 26, 2009.

David Jay Gonen, Justin Leonard Krieger, Katten Muchin Rosenman LLP, Washington, DC, Kenneth Joseph Ottaviano, William J. Dorsey Katten Muchin Rosenman LLP, Chicago, IL, for Plaintiff.

Brent W. Procida, Gregory A. Cross, Venable LLP, Baltimore, MD, Eric Matthew Rigatuso, Thomas Jay Althauser, Eccleston and Wolf PC, Hanover, MD, for Defendants.

## MEMORANDUM OPINION

DEBORAH K. CHASANOW, District Judge.

Presently pending and ready for resolution in this breach of contract action is the motion for partial summary judgment filed by Plaintiff CapitalSource Finance LLC. (Paper 92). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part and denied in part.

## I. Background

Defendant Delco Oil, Inc. ("Delco"), a distributor of petroleum products, entered into a financing arrangement with Plaintiff pursuant to a lengthy written agreement (the "Credit Agreement") that was ultimately executed by Delco's president and sole shareholder, Stephen DeLuca, on April 26, 2006. Also on April 26, 2006, Stephen DeLuca executed a personal guarantee (the "Guaranty Agreement") of Delco's obligation to repay the revolving line of credit balance. Under the Credit Agreement, Plaintiff provided Delco with a revolving line of credit, and Delco pledged all of its current and after-acquired personal property as security for the line of credit. In particular, Delco pledged its accounts receivable and inventory. Payments made on Delco's accounts receivable are referred to under the Credit Agreement as Plaintiff's "Cash Collateral," and Plaintiff acquired a first priority lien over

these payments. Delco was required, under the Credit Agreement, to deposit these collections immediately into an account, referred to as the "Blocked Account," from which only Plaintiff could make withdrawals. These payments would be credited against Delco's outstanding balance under the line of credit, thus allowing Delco to make further withdrawals to continue operating its business. The Credit Agreement also provided that the revolving line of credit extended to Delco would be capped at the lower of $18 million, or the result of a formula based on the value of certain of Delco's accounts receivable and a portion of its inventory. Before making withdrawals from the revolving line of credit, Mr. DeLuca was required to submit and personally certify the accuracy of periodic statements of Delco's accounts receivable and inventory, referred to in the Credit Agreement as "Borrowing Base Certificates." Based on the initial documentation submitted by Delco, its line of credit was capped at $14,322,760.89 as of the date the Credit Agreement and Guaranty Agreement were executed, and Delco began withdrawing funds from the line of credit.

In September of 2006, Plaintiff discovered that Delco was in default under the Credit Agreement. Plaintiff sent Delco a written notice of default on September 26, 2006, indicating that Delco had defaulted on the Credit Agreement by failing to deposit its cash collections into the Blocked Account, failing to deliver required Borrowing Base Certificates and other required certifications, and failing to notify Plaintiff of the other defaults pursuant to the terms of the Credit Agreement. On approximately October 5, 2006, Delco requested a post-default advance from Plaintiff, in the amount of $633,213.65.

Plaintiff granted the advance, after requiring Delco, through DeLuca, to acknowledge the occurrence of the default events noted in the September 26, 2006 notice, requiring the provision of additional collateral, and requiring Delco to sign a waiver for any defenses, causes of action, or other claims against Plaintiff. Plaintiff funded a second post-default advance on October 6, 2006.

Plaintiff filed the present action, along with a motion for Temporary Restraining Order ("TRO") on October 13, 2006. Plaintiff's initial complaint alleged two counts of breach of contract against Delco for breach of the Loan Agreement and against Mr. DeLuca for breach of the Guaranty Agreement. The court granted Plaintiff's TRO motion and entered a TRO on October 16, 2006. Delco filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida the next day, October 17, 2006.[1] On January 19, 2007, Plaintiff filed a motion for leave to amend the complaint, which was granted on January 22, 2007. The amended complaint adds seven additional defendants and twelve additional counts to the initial complaint. (*See* Paper 44). On September 17, 2007, this court ruled on motions to dismiss filed by Defendants Stephen DeLuca, All–Star Sports Camp, DeLuca Properties, Inc., Gas Properties, Inc., Richard Thames, Stutsman Thames & Markey, P.A., Denise DeLuca, and Steven Markus. As a result, counts VI, VII, VIII, IX, X, XII, and XIII of the complaint were dismissed. Count V was dismissed in part. Denise DeLuca and Steven Markus were terminated as Defendants on September 18, 2007. Defendants All Star Sports Camp, Gas Properties, Inc., DeLuca Properties, and Stephen De-

---

1. The Automatic Stay associated with Delco's bankruptcy petition was lifted with respect to Plaintiff's claims against Delco in this action on March 21, 2007, by Order of the United States Bankruptcy Court for the Middle District of Florida. (*See* Paper 65, Ex. A).

Luca filed answers to the amended complaint on November 19, 2007. (Papers 82, 83, 84, 85). Plaintiff moved for partial summary judgment against Delco and Deluca on the breach of contract claims (counts I and II) and on the fraud claims (counts III and IV) on June 16, 2008. (Paper 92). Delco has neither filed an answer nor responded to Plaintiff's motion for summary judgment.

## II. Motion for Partial Summary Judgment

### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.1997), *cert. denied*, 522 U.S. 810, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Analysis

Plaintiff moves for summary judgment on the breach of contract claims in counts I and II, arguing that Delco and Mr. DeLuca do not dispute that the Credit Agreement and Guaranty Agreement are valid contracts which Delco and Mr. DeLuca breached. (Paper 92, at 15). Plaintiff also moves for summary judgment on counts III and IV, fraud and fraudulent inducement claims against Mr. DeLuca, arguing that there are no genuine issues of material fact related to Mr. DeLuca's alleged fraudulent activity related to the Credit Agreement. Finally, Plaintiff requests that

the judgment in its favor be certified pursuant to Fed.R.Civ.P. 54.

### 1. Count I—Breach of Credit Agreement (Delco)

■ Plaintiff alleges that Delco has breached and repudiated the Credit Agreement by failing and refusing to pay the principal amount, $19,538,914.89, to which Plaintiff is entitled pursuant to the terms of the Credit Agreement. (Paper 41, ¶ 122). As noted above, Delco neither filed an answer nor responded to Plaintiff's motion for summary judgment.

Here, it is undisputed that Plaintiff and Delco entered into a Credit Agreement and that the Credit Agreement was a valid contract. Additionally, it is undisputed that Delco is in default of the Credit Agreement. Specifically, Plaintiff provides undisputed evidence that Delco defaulted on the Credit Agreement by: (i) failing to send certain cash receipts and collections of accounts to the blocked account; (ii) failing to execute and deliver sufficient support for the borrowing base certificates; (iii) failing to deliver a compliance certificate accompanied by the calculations necessary to show compliance with the financial covenants set forth in the Credit Agreement; and (iv) failing to notify Plaintiff of the events of default within the requisite time period as set forth in the Credit Agreement. (Paper 92, at 5). Plaintiff submits a letter that it sent to Delco on September 26, 2006 notifying Delco and DeLuca of the events of default. (*Id.*, Ex. 1.2, CapitalSource Ltr., Sept. 26, 2006). Plaintiff also notes that Mr. DeLuca's answer to the complaint admits that "Delco has defaulted on its loan obligations." (*Id.*, Ex. 2, DeLuca Answer ¶ 1).

Additionally, Plaintiff points out that Delco and Mr. DeLuca executed post default discretionary advance letters on or about October 5 and October 6, 2006 in which both Delco and Mr. DeLuca acknowledged that the events of default had occurred and were continuing.[2] (Paper 92, at 5–6; Ex. 1.3, CapitalSource Ltr., Oct. 5, 2006; Ex. 1.4 CapitalSource Ltr., Oct. 6, 2006).

Plaintiff has shown that there are no genuine issues of material fact regarding Delco's breach of the Credit Agreement. Accordingly, the motion for summary judgment on count I will be granted.

### 2. Count II—Breach of Guaranty Agreement (DeLuca)

Plaintiff alleges that on or about April 26, 2006, and as a condition precedent to Plaintiff's execution of the Credit Agreement, Mr. DeLuca executed and delivered to Plaintiff the Guaranty Agreement. (Paper 41, ¶ 33). Plaintiff further alleges that pursuant to the terms of the Guaranty Agreement, Mr. DeLuca unconditionally and absolutely guaranteed: (i) punctual payment and performance when due of all obligations related to the Credit Agreement; (ii) all liabilities and obligations of Delco; and (iii) all costs, expenses, and liabilities incurred by Plaintiff to enforce the Guaranty Agreement and to enforce the Guaranty Agreement and to collect all or any part of Delco's liabilities from DeLuca. (*Id.* ¶ 34). Plaintiff alleges despite its demand for payment, Mr. DeLuca has failed to pay the aggregate amount of Delco's liabilities owed to Plaintiff, and thus is in breach of the Guaranty Agreement. (*Id.* ¶ 128).

---

**2.** The dates on the October 5, 2006 letter appear to be mistaken. Page one of the letter is dated October 5, 2006, but the remaining pages are dated October 6, 2006. Notwithstanding the error, there are clearly two post-default advance letters from Plaintiff to Delco, both of which are initialed on each page by Mr. DeLuca and executed by Mr. DeLuca on behalf of Delco and as guarantor.

Plaintiff contends that Mr. DeLuca signed several post-default discretionary advance letters that not only acknowledged his obligations under the Credit Agreement and Guaranty Agreement, but also released any defenses Mr. DeLuca might have against Plaintiff. Plaintiff asserts that Mr. DeLuca's answer, which contains seven boilerplate affirmative defenses, offers no facts to support the affirmative defenses and each may be disposed of on summary judgment. Plaintiff also notes that Mr. DeLuca admits that he executed the Guaranty Agreement.

■ A guaranty agreement is a contract under which the guarantor promises to perform the obligations of the principal if the principal fails to perform. *See Gen. Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 260–61, 492 A.2d 1306 (1985). Under the objective theory of contracts, which applies in Maryland,

> a court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into; when the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what they expressed.

*Mathis v. Hargrove,* 166 Md.App. 286, 318–19, 888 A.2d 377 (2005)(internal marks and citation omitted).

It is undisputed that the Guaranty Agreement is a valid contract. It is also undisputed that under the terms of the Guaranty Agreement, Mr. DeLuca "unconditionally and absolutely guarantee[d] (i) the due and punctual payment and performance when due of the principal of the Loans ... and the interest thereon and of the other [o]bligations and any and all other monies and amounts due or which may become due...." (Paper 92, Ex. 16 ¶ 2). Thus, under the Guaranty Agreement, Mr. DeLuca is liable to Plaintiff in the event that Delco breached the Credit Agreement, which, as discussed above, has occurred.

Mr. DeLuca argues that Plaintiff cannot obtain summary judgment on the breach of Guaranty Agreement claim and may not be able to recover on this claim at all because (i) Plaintiff did not provide Mr. DeLuca with notice of its disposition of collateral; and (ii) Plaintiff has not provided any evidence that its liquidation of collateral was commercially reasonable. (Paper 94, at 6). Mr. DeLuca maintains that §§ 9–607 and 9–610 of the Uniform Commercial Code ("UCC") require that a secured party give notice to a guarantor prior to the disposition of any collateral.[3] (*Id.* at 7). Mr. DeLuca insists that the failure to provide notice in advance of the disposition of collateral is an absolute bar to the recovery of a deficiency judgment. Mr. Deluca further argues that under *Ruden v. Citizens Bank & Trust Co.,* 99 Md.App. 605, 638 A.2d 1225 (1994), "every aspect" of the disposition of collateral must be commercially reasonable.

In the event of default, Md.Code Ann., Com. Law § 9–610 allows a secured party to sell the collateral and apply the proceeds to the outstanding balance of the debt. Section 9–610 provides:

> (a) After default, a secured party may sell, lease, license, or otherwise dispose of any and all of the collateral in its present condition or following any commercially reasonable preparation or processing.

---

3. Maryland's adoption of the Uniform Commercial Code is codified under Md.Code Ann, Commercial Law §§ 1–101–10–112.

(b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.

When a secured creditor has retaken the collateral after default and intends to dispose of it by private sale, § 9–611 governs the requirement of notice from the creditor to the debtor. Section 9–611 provides:

(b) ... a secured party that disposes of collateral under § 9–610 *shall* send to the persons specified in subsection (c) a reasonable authenticated notification of disposition.

(c) To comply with subsection (b), the secured party *shall* send an authenticated notification of disposition to:

(1) The debtor;

(1) Any secondary obligor ...

■ While Mr. DeLuca correctly notes that *Ruden* requires a commercially reasonable disposition of collateral, he is incorrect to argue that a commercially unreasonable sale will result in an absolute bar to a deficiency judgment. In the event that the disposition of collateral occurs in a manner that is commercially unreasonable, Maryland has adopted the rebuttable presumption rule. "[T]he sanction imposed on a creditor for a commercially unreasonable sale will not be that of an absolute bar to any deficiency judgment." *Ruden*, 99 Md.App. at 633, 638 A.2d 1225. Instead,

under th[e] rebuttable presumption rule, the debtor or obligor is to be credited with the greater of the actual proceeds of the disposition or the proceeds that would have been realized had the secured party complied with the relevant provision. If a deficiency remains, then the secured party is entitled to recover it.

§ 9–626 cmt.3. "[T]he rebuttable presumption rule represents a fair accommodation between the legitimate interests of the debtor and the residual interests of even a creditor whose actions have not necessarily

been commercially reasonable and is, therefore, the preferred approach." *Ruden*, 99 Md.App. at 634, 638 A.2d 1225. Thus, even if Plaintiff's failure to give notice was commercially unreasonable, Plaintiff would not be barred from recovering a deficiency judgment.

■ Plaintiff responds that the UCC and the commercial reasonableness standard are not applicable unless and until a lender seeks to enforce its UCC remedies against a borrower, which Plaintiff did not. The language of the Guaranty Agreement provides, in relevant part:

3. ... The liability of Guarantor under this Guaranty shall be primary and direct and not conditional or contingent upon the enforceability of any obligation. ... Lender shall not be required to make any demand on Borrower or any other guarantor of the Guaranteed Obligations or any other Person or to sell at foreclosure or otherwise pursue or exhaust its remedies against any Collateral or Borrower or any other guarantor of the Guaranteed Obligations or any other Person before, simultaneously with or after enforcing its rights and remedies hereunder against Guarantor

. . . .

19. Lender shall have the right in its sole discretion to determine which rights, powers, Liens, Security interests or remedies Lender may at any time pursue, relinquish, subordinate or modify or to take any other action with respect thereto and such determination will not in any way modify or affect any of Lender's rights, powers, Liens, security interests or remedies hereunder or under any of the Loan Documents, under applicable law or at equity.

(Paper 92, Ex. 16 ¶¶ 3, 19). Plaintiff insists that because it did not enforce UCC remedies against Mr. DeLuca, the UCC

commercial reasonableness standard does not apply.

In *Duke v. Reconstruction Finance Corp. ("R.F.C.")*, 209 F.2d 204 (1954), *cert. denied*, 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108 (1954), R.F.C. brought an action to recover on a contract of guaranty executed by Milton Duke and Morton Kemper to secure a loan made to Bond Construction Corporation ("Bond"). R.F.C. made several payments to Bond in accordance with the loan agreement. Upon Bond's default on the loan, R.F.C. sought recovery from the guarantors, Duke and Kemper. The district court entered judgment in favor of R.F.C. against Duke and Kemper. On appeal, Duke and Kemper raised several defenses, one of which was that the secured party, R.F.C., "did not diligently enforce its rights or supposed rights against collateral security additional to the guaranty held to secure the note...." *Id.* at 206. The United States Court of Appeals for the Fourth Circuit rejected Duke and Kemper's argument, noting that it was "directly contrary to both the law of guaranty and the documents which control this case." *Id.* The court pointed to the language of the guaranty, which provided that R.F.C. "shall not be required, prior to any such demand on, or payment by the [guarantors] to make demand upon or pursue or exhaust any of its rights or remedies against the Debtors or others with respect to the payment of any of the Liabiilties [sic], or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral." The court noted that the guaranty also includ-

ed language granting R.F.C. "uncontrolled discretion ... to deal in any manner with the liabilities and the collateral," and that "[t]he obligation of [Duke and Kemper] shall not be released, discharged or in any way affected ... by reason of any action the Corporation may take or omit to take under the foregoing powers." *Id.* at 207. The court held that the language of the guaranty "confer[red] on R.F.C. the right to determine whether or not to pursue such rights in the discretion of R.F.C."

Here, paragraph 19 of the Guaranty Agreement gives Plaintiff the discretion to determine which remedies, if any, to pursue against Mr. DeLuca in the event of default by Delco. Additionally, paragraph 3 of the Guaranty Agreement specifically states that Plaintiff does not have to exhaust its remedies against the collateral prior to seeking repayment from the guarantor, Mr. DeLuca. Accordingly, based on the rule set forth in *Duke*, Plaintiff was not required to dispose of the collateral, much less notify Mr. DeLuca. Therefore, Mr. DeLuca's affirmative defense upon which he opposes the motion for summary judgment fails.[4]

There are no genuine issues of material fact related to the breach of the Guaranty Agreement. Accordingly, Plaintiff's motion for summary judgment on count II will be granted.

### 3. Damages

Plaintiff's motion requests judgment in the amount of $19,538,914.89, plus pre- and post-judgment interest, additional costs,

---

4. Mr. DeLuca asserted the following affirmative defenses in his answer: (i) fraudulent inducement; (ii) release; (iii) estoppel; (iv) unclean hands; (v) failure to dispose of collateral in a commercially reasonable manner; (vi) duress; and (vii) lack of subject matter jurisdiction over counts v and xiv. (Paper 84, at 16–17). Only the fifth is pursued in the opposition to Plaintiff's motion for summary

judgment. Because it was his responsibility to support those defenses on which he has the burden of proof with evidence in responding to Plaintiff's motion for summary judgment, those defenses fail. He has also failed to present evidence generating a material dispute of fact as to any other defense noted in the answer.

and expenses. The calculation and explanation of that request appears in the Declaration of Todd R.A. Gehrs, an officer of CapitalSource. (Paper 92, Ex. 21.).

As of June 1, 2008, as shown on Table 21.1, the loan balance was $18,044,804.14 and the accrued default interest was $1,460,778. Mr. Gehrs states that for purposes of summary judgment only, Plaintiff has agreed to forgo the collection of attorney's fees, costs, and expenses that it has incurred in connection with collection efforts and the loan balance calculation excludes those amounts. The amount sought is the sum of: (a) the Revolving Facility balance as of June 5, 2008; (b) the Revolving Facility Default Interest pursuant to Section 3.5 of the Credit Agreement; and (c) Accrued Expenses and Fees chargeable to the Revolving Facility Loan Balance pursuant to the terms of the Credit Agreement. Table 21.1 is the Delco Oil, Inc. Internal Interest Report which sets forth the loan balance calculation since the inception of the loan through June 5, 2008, exclusive of default interest and collection costs. The interest rate is variable as set forth in Section 2.3 of the Credit Agreement, but not below 8.3%. The interest due is added to the balance due on the 1st of each month. Table 21.1 provides a separate calculation of the additional default interest as specified in Section 3.5 of the Credit Agreement. Default interest accrues at 5% per day, and is not compounded.

The charts reflect that the total balance as of June 5, 2008, was $19,538,914.89. Although Plaintiff requests additional prejudgment interest, the information provided is not sufficient for the court to calculate with certainty additional interest due beyond the end of June, 2008, because precise calculation of additional interest for the period to date requires knowledge of the LIBOR Rate and/or the Prime Rate. During June, the interest rate was 8.3%.

If the lowest possible interest rate of 8.3% is used, the following chart reflects the calculations for the loan balance, without default interest:

| Month | Balance | Interest on Balance 8.3% |
|---|---|---|
| June 2008 | $18,044,804.14 | $124,809.90 |
| July 2008 | $18,169,614.04 | $129,862.27 |
| August 2008 | $18,299,476.30 | $130,790.42 |
| September 2008 | $18,430,266.73 | $127,476.01 |
| October 2008 | $18,557,742.74 | $132,636.31 |
| November 2008 | $18,690,379.05 | $129,275.12 |
| December 2008 | $18,819,654.17 | $134,508.25 |
| January 2009 | $18,954,162.42 | $135,469.61 |
| February 2009 | $19,089,632.03 | $123,234.18 |
| Through March 26, 2009 | $19,212,866.21 | $115,170.46 |

The default interest accrues at 5%:

| Month | Default Interest 5% |
|---|---|
| June 2008 | $ 75,186.68 |
| July 2008 | $ 78,230.28 |
| August 2008 | $ 78,789.41 |
| September 2008 | $ 76,792.78 |
| October 2008 | $ 79,901.39 |
| November 2008 | $ 77,876.58 |
| December 2008 | $ 81,029.07 |
| January 2009 | $ 81,608.20 |
| February 2009 | $ 74,237.45 |
| Through March 26, 2009 | $ 69,379.79 |
| | $773,031.68 |

When the amounts are added together, the amount due as of March 26, 2009, is $21,561,846.30, consisting of $19,328,036.67 loan balance and accrued interest (and other fees prior to June 1, 2008) plus $2,233,809.63 in accrued default interest. Delco and Mr. DeLuca are jointly and severally liable for the entire of amount of the judgment.

#### 4. Counts III & IV: Fraud—Mr. DeLuca

 Plaintiff alleges that Mr. DeLuca intentionally provided Plaintiff with, among other things, financial statements, accounts receivable aging reports, and inventory reports containing fraudulently inflated figures to induce Plaintiff to enter into the Credit Agreement. (Paper 44, ¶ 131). Plaintiff further alleges that the misrepresentations were material because Plaintiff justifiably relied on them to enter into the Credit Agreement to fund to loan. (*Id.* ¶ 133). Plaintiff alleges that it has suffered damage in excess of $18 million, the amount of the funds loaned under the Credit Agreement that has not been repaid, in addition to costs, interest, and fees. (*Id.* ¶ 135).

 The tort of fraudulent inducement "means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment." *Rozen v. Greenberg*, 165 Md.App. 665, 674, 886 A.2d 924 (2005)(quoting *Sec. Constr. Co. v. Maietta*, 25 Md.App. 303, 307, 334 A.2d 133 (1975); Paul Mark Sandler & James K. Archibald, Pleading Causes of Action in Maryland §§ 3.25–3.26 (2004)). In order to recover for either fraud or fraudulent inducement, "a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660 (1994)(citing cases); *Rozen*, 165 Md.App. at 674–75, 886 A.2d 924 (citing *Hoffman v. Stamper*, 385 Md. 1, 28, 867 A.2d 276 (2005)).

Plaintiff argues that summary judgment is proper because Mr. DeLuca conceded almost every element of the claims for fraud and fraudulent inducement. Plaintiff asserts that under the terms of the loan documents, the representations about accounts receivable and inventory certified in the borrowing base certificates are clearly material, and Plaintiff relied on them to enter into the Credit Agreement and to advance Delco funds under the terms of the Credit Agreement. Plaintiff further argues that it is also undisputed that Delco has not repaid the advanced funds and that Plaintiff has been injured as a direct and proximate result. Additionally, Plaintiff notes that Richard Hill, comptroller of Delco, admitted both under oath in connection with his criminal plea agreement, and to David O'Callahan, a private investigator hired by Plaintiff, that Hill was engaged in a conspiracy, directed by Mr. DeLuca, to defraud Plaintiff. However, Mr. DeLuca insists that Mr. Hill's plea is unreliable and was a desperate attempt by Mr. Hill to reduce his sentence. Plaintiff adds that in addition to these admissions, it is undisputed that Mr. DeLuca closely monitored Delco's actual inventory and accounts receivable and payable information on a daily basis.

Plaintiff submits that, although the element of intent is a contested issue, material facts are not in dispute. Plaintiff notes that Mr. DeLuca claims to be ignorant of the fraud at his company, and suggests that Mr. Hill was acting alone. Plaintiff argues that the issue of intent should be resolved against Mr. DeLuca because his culpability for the fraud is apparent from objective circumstances about which there is no genuine issue of material fact. Plaintiff insists that Mr. DeLuca reviewed, approved, and signed bor-

rowing base certificates that overstated the company's accounts receivable by approximately $8 million, and submitted them to Plaintiff, knowing that the borrowing base certificates were false at the time they were submitted because he was kept apprised on a daily basis of the company's actual accounts receivable.

Plaintiff argues that, based on *Gussin v. Shockey*, 725 F.Supp. 271 (D.Md.1989), the court may infer Mr. DeLuca's intent to commit fraud based on the undisputed facts. However, in contrast to *Gussin*, Mr. DeLuca disputes the facts that Plaintiff argues should be used to infer intent. Mr. DeLuca presents his own affidavit, in which he denies any knowledge of falsifying the information in the borrowing bank certificates. (Paper 94, DeLuca Aff. ¶ 12). Mr. DeLuca states that Mr. Hill prepared and executed all of the borrowing base certificates submitted to Plaintiff, except for the first certificate executed at the closing of the loan and several certificates prepared by Kevin Morrissey in September 2006, while Mr. Hill was on vacation. (*Id.* ¶ 5). Mr. DeLuca adds that the only borrowing base certificates that he signed were the initial certificate at the inception of the Credit Agreement, and the certificates prepared by Mr. Morrissey. (*Id.* ¶ 6). Mr. DeLuca states that in September 2006, he discovered accounting irregularities which suggested that certain Delco accounts may have been fabricated. In response, Delco retained the law firm of Stutsman, Thames & Markey and informed Plaintiff of the accounting irregularities. Mr. DeLuca states that he "did not prepare and generally did not sign the borrowing base certificates." (*Id.* ¶ 7). Mr. DeLuca also denies that inventory in an amount greater than Delco's tank capacity would raise suspicion. Mr. DeLuca states that inventory also included oil stored in trucks, and barrels at leased facilities where Delco did not own the tanks. Plaintiff responds that Mr. DeLu-

ca's explanation is a "nonsensical proposition." (Paper 97, at 3 n. 2).

Mr. DeLuca argues that substantial issues of fact prevent summary judgment on the fraud claims. Mr. DeLuca argues that Mr. Hill's testimony that Mr. DeLuca knowingly supplied false borrowing base certificates is directly contradicted by Mr. DeLuca's affidavit. Mr. DeLuca also argues that Plaintiff's own exhibits in support of its motion for summary judgment support Mr. DeLuca's claim that he was not involved in falsifying the borrowing base certificates. Mr. Morrissey testified that he rarely saw Mr. DeLuca at the Delco office and that Mr. DeLuca was not involved with Delco's accounting. (Paper 92, Ex. 13, Morrissey Testimony 23:8–13). James Kaufmann testified that Mr. Hill, the comptroller had "carte blanche access to everything within their general ledger, accounting software and could kind of, as needed, go in and do whatever he needed to do." (*Id.*, Ex. 12, Kaufmann Testimony 21:10–14). Claudia Kemp testified that Mr. Hill "did the borrowing base everyday." (*Id.*, Ex. 8, Kemp Testimony 22:11–16).

The evidence presented by both Plaintiff and Mr. DeLuca demonstrate that there are genuine issues of material fact regarding the extent of Mr. DeLuca's preparation of the borrowing base certificates and his intent to defraud Delco. There are also genuine issues of material fact that preclude an inference of intent to defraud.

■ Alternatively, Plaintiff argues that assuming, *arguendo*, that Mr. DeLuca did not have actual knowledge of the fraud, the evidence is undeniable that he was at least willfully blind or recklessly indifferent to the fraud. Plaintiff further argues that Mr. DeLuca cannot escape liability by claiming that he directed Mr. Hill or his other employees to perform the actual accounting irregularities necessary to imple-

ment the fraud, and that Mr. DeLuca's self serving denials are insufficient to create an issue of material fact. "A defendant is willfully blind when [he] purposefully and deliberately contrives to avoid learning all the facts." *United States v. Campbell,* 977 F.2d 854, 857 (4th Cir.1992). Plaintiff has failed to demonstrate that the undisputed facts show that Mr. DeLuca acted with willful blindness.

Notwithstanding the admissibility issues presented by the documents attached to Plaintiff's motion for summary judgment, genuine issues of material fact remain regarding Mr. DeLuca's intent to defraud Plaintiff and Mr. DeLuca's intent to fraudulently induce Plaintiff into entering the Credit Agreement. Therefore, the motion for summary judgment will be denied with respect to counts III and IV.

### 5. Rule 54(b) Certification of Judgment

Fed.R.Civ.P. 54(b) provides:
When an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Because of the importance of preventing piecemeal appeals of a case, a "Rule 54(b) certification is recognized as the exception rather than the norm. It should neither be granted routinely, nor as an accommodation to counsel." *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir.1993) (citation omitted). Furthermore, "it is settled that certification of a judgment as to a claim or party in a multi-claim or multi-party suit is disfavored in the Fourth Circuit." *Bell Microproducts, Inc. v. Global–Insync, Inc.,* 20 F.Supp.2d 938, 942 (E.D.Va.1998).

To make a proper Rule 54(b) certification, a district court must take two steps:

(1) determine whether the judgment is "final" ... in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action[,]" [and] ...

(2) determine whether there is no just reason for the delay in the entry of judgment.

*Braswell Shipyards,* 2 F.3d at 1335 (citing *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7–8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)(internal citations omitted)). The Fourth Circuit has explained that, in making this case-specific determination, the district court should consider the following factors if applicable:

(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Braswell Shipyards,* 2 F.3d at 1335–36 (citations omitted).

To qualify as a "final judgment":

It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

*Curtiss–Wright*, 446 U.S. at 7, 100 S.Ct. 1460 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). Here, the grant of summary judgment in favor of Plaintiff on counts I and II, the breach of contract claims, constitute a final judgment. Thus, the remaining question is whether "there is no just reason for delay." Fed. R.Civ.P. 54(b). In making such a determination, the court "must take into account judicial administrative interests as well as the equities involved." *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. 1460. As the Supreme Court has cautioned, Rule 54(b) certification is not something to be granted lightly, but a "remedy [that] should be reserved for the infrequent harsh case." *Id.* at 5, 100 S.Ct. 1460.

Plaintiff requests that the judgment against Delco and/or Mr. DeLuca be certified as final pursuant to Fed. R.Civ.P. 54(b). Plaintiff made this request on the assumption that judgment would be entered in its favor on all of the first four counts, an assumption that has not come to pass. Other counts involving Mr. DeLuca remain unresolved, but Delco's liability is fully decided in this opinion. Plaintiff contends that counts I–IV do not significantly overlap with the remaining counts of the amended complaint, and the subsequent resolution of the remaining claims do not depend on the resolution of counts I–IV. Plaintiff also points out that neither Delco or Mr. DeLuca have asserted any counterclaims, thus eliminating the possibility of offset. Mr. DeLuca does not advance any arguments in opposition of certification. As noted above, Delco has neither answered the complaint nor opposed the entry of summary judgment.

 Based on a review of all facets of this case, the court finds no sufficiently important reason for granting certification as to count II, but will certify the judgment as to count I. Delco is involved in

Chapter 7 bankruptcy proceedings and "[c]ourts have frequently found no just reason for delay, and entered a Rule 54(b) judgment, when the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings." *Pereira v. Cogan*, 275 B.R. 472, 474 (S.D.N.Y.2002)(citing cases), *aff'd* 52 Fed. Appx. 536, 538 (2d Cir.2002). However, it appears that Mr. DeLuca's involvement in all aspects of this case weighs against certification on count II.

 In addition to counts III and IV, Plaintiff's claims against Mr. DeLuca for conversion (count V) and specific performance (count XIV) remain, as does the question of his contempt. Additionally, Mr. DeLuca, as the sole shareholder of DeLuca Properties, Gas Properties, and All Star Sports Camp, inevitably will be involved in the adjudication of count XI, which includes alter ego claims against each entity. As this circuit has noted, "the fact the parties on appeal remain contestants below militates against the use of Rule 54(b)." *Braswell*, 2 F.3d at 1336 (citing *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 44 (1st Cir.1988)). Regardless of how the appellate court may rule, Mr. DeLuca is fully enmeshed in almost every aspect of this suit. Furthermore, "[c]ertification should be avoided when further trial court proceedings might force an appellate court to revisit the issues relevant to the partially-resolved case." *Fox v. Baltimore City Police Dept.*, 201 F.3d 526, 531 (4th Cir.2000). Issues related Mr. DeLuca's role as guarantor for Delco under the Guaranty Agreement, and his role as sole shareholder of Delco Oil, are most certainly relevant to the claims for fraud and fraudulent inducement (counts III and IV), and may also be revisited in the context of the other claims. Granting certification as to him may therefore require the appellate court to review the Credit and

Guaranty Agreements, the transaction between Plaintiff and Delco, and Mr. DeLuca's involvement in the entire controversy on two separate occasions. This is certainly not in the best interest of efficient judicial administration. Therefore, the judgment will not be certified pursuant to Rule 54(b) as to Mr. DeLuca.

## III. Conclusion

For the foregoing reasons, the motion for summary judgment will be granted in part and denied in part. Plaintiff's request to certify the judgment pursuant to Rule 54(b) will be granted in part and denied in part. A separate Order will follow.